IN DECEMBER, 1845.

---

### SUYDAM and others *vs.* WESTFALL.

Where a bill of exchange was drawn by several, one of whom joined in it as a *surety* for the others, who procured the bill to be discounted before acceptance for their own benefit; and the drawee with knowledge of these facts accepted and paid the bill without funds of any of the drawers in his hands, *held* that he might recover the amount against *all the drawers* in an action for money paid to their use.

ON error from the supreme court. The plaintiffs in error brought *assumpsit* in the court below against the partners of the firm of Norton, Bartle & McNeil, and, the defendant West-fall, to recover the amount of a bill of exchange drawn by the defendants upon the plaintiffs which the latter had accepted and paid at maturity to the holders. The cause was first tried in February, 1842, when the plaintiffs had a verdict which was afterwards set aside by the supreme court and a new trial granted. For the facts proved and the opinion of the court below on that occasion, see 4 *Hill*, 211. Before the second trial the defendants Bartle and Norton severally obtained their certificates and discharges under the bankrupt act; which they pleaded *puis darrien continuance*, and the same were admitted

[205]

by the plaintiffs. McNeil the other partner had died, and that fact was suggested on the record. The cause proceeded against Westfall alone, and was tried a second time in May, 1843, when a verdict was rendered for the defendant. The evidence was substantially the same as on the former trial. . The circuit judge charged the jury in accordance with the opinion of the supreme court, that if they should find that the defendant Westfall became a party to the bill as the surety of Norton, Bartle & McNeil, the other drawers, and had no beneficial interest therein, and no part of the proceeds went to his use, in that case the law implied no contract on his part to refund the amount to the plaintiffs, and that the jury in that event ought to find for the defendant. The plaintiffs excepted. Upon the question of usury, he charged substantially as upon the former trial. In July, 1843, the plaintiffs moved the court below for a new trial on a bill of exceptions, which was refused, and judgment was rendered for the defendant, upon which the plaintiffs brought error.

*M. S. Bidwell & George Wood,* for the plaintiffs in error. 1. The defendant by becoming a co-drawer of the bill is to be deemed to have intended to assume the character of a principal debtor to the full extent of all the liabilities growing out of the drawing of the bill; and the plaintiffs having become parties by accepting on the faith of his name, he is estopped from denying such liability. (*Nelson* v. *Dubois*, 13 *John.* 175.) The liability of the drawers of a bill drawn without funds, to the drawee who has accepted and paid it arises out of the drawing of the bill. A *stranger* to the bill may accept *supra protest*, and upon payment may recover against the drawers; and the drawee, *a fortiori* is entitled to recover upon such acceptance and payment. In both cases the liability of the drawers arises out of the drawing of the bill; though in the latter case the remedy is not on the bill itself. The acceptance and payment of bills by the party on whom they are drawn for the credit of the drawers, are transactions recognized by law and commercial usage; and the defendant when he became a drawer must be presumed to have known the character and operation of the

Suydam *v.* Westfall.

instrument to which he thus became a party. In the case of *Griffith* v. *Reed,* (21 *Wend.* 502,) relied on by the defendant, the form of the bill was different from the one in this case. It contained a request to charge the amount to Dixson alone, and Reed added the word *surety* to his name. Here the request is to charge to all the drawers including the defendant, and there is nothing about the bill to indicate any distinction between them.

2. The letter from the plaintiffs to the Bank of Geneva shews conclusively that they had determined not to accept further for Norton, Bartle & McNeil, and that they acted upon the faith of the defendant's name. The right to resort to Westfall was a security that all the parties had in view. The defendant's name was not procured for the security of the bank; for the bank discounted the bill upon the credit of the plaintiffs and upon their agreement to accept contained in that letter.

3. All the evidence necessary to raise an implied *assumpsit* is found in this case. The defendant joined in a request to the plaintiffs to make the advance, and the money was advanced upon the security which his name afforded. When the plaintiffs took up the bill pursuant to the request contained in it, they by that act relieved the defendant from his liability to the holder. This was equally beneficial to him as though he had upon the discount of the bill received the money for his own benefit. (*Tom* v. *Goodrich,* 2 *John.* 213; *Sluby* v. *Champlin,* 4 *id.* 461; *U. S.* v. *Cushman,* 2 *Sumn.* 426.) Where one requests another to advance money, the law implies a contract on the part of him who makes the request, to refund it, though he may not have been interested in the purpose to which it was applied. (1 *Saund.* 264, *note* (1); *Knox* v. *Devens,* 5 *Mason,* 380; *Bartholomew* v. *Jackson,* 20 *John.* 28.)

*A. Worden,* for the defendant in error. 1. The contract of the drawers of a bill is that the person on whom it is drawn shall accept and pay it, and that upon *his* failure (and upon that event only) *they* will pay it. The acceptors on their part promise the drawers that they will pay the bill when it matures.

When, therefore, the plaintiffs paid this bill they only performed their contract arising out of its terms, and the payment at the same time discharged the contract of the drawers. The contract of the drawers is with the holder and endorsers, not with the acceptor, and the latter cannot under any circumstances bring an action on the bill or upon any contract arising out of it against the drawers, whether it be an accommodation bill or not. (*Clarke* v. *Cock*, 4 *East*, 72; *Simmonds* v. *Parminter*, 1 *Wils.* 185; *Chitty on Bills*, 8th *Am.* ed. 568, 648; *Watson* v *Kightley*, 11 *Ad. & Ell.* 702; *Cruger* v. *Armstrong*, 3 *John. Cas.* 7—9; *Griffith* v. *Reed*, 21 *Wend.* 505; *Young* v. *Hochley*, 3 *Wils.* 346; *Chilton* v. *Whiffin*, id. 13.) And the legal effect of the bill cannot be changed by other testimony. (*Prosser* v. *Luqueer*, 4 *Hill*, 420; *Phelps* v. *Garrow*, 8 *Paige*, 322; *Seabury* v. *Hungerford*, 2 *Hill*, 80; *Wing* v. *Terry*, 5 *id.* 160.) The defendant being a surety, his liability must be tested by the contract to which he became a party and cannot be extended beyond its strict legal effect. (*Phelps* v. *Garrow*, *sup.*) The conduct of the plaintiffs shews that they did not regard the defendant as being liable to them. Upon accepting the bill they charged the amount of it in account to Norton, Bartle & McNeil, and treated the indebtedness growing out of it as the proper debt of that firm.

2. There is no implied undertaking on the part of the defendant to indemnify the plaintiffs for paying the bill. The evidence establishes the fact that Westfall signed the bill as surety. He is therefore entitled to all the privileges attached to that character, one of which is that of not being bound beyond the precise legal effect of the contract. (*Huffman* v. *Hulbert*, 13 *Wend.* 375; *Walsh* v. *Bailie*, 10 *John.* 180; *Ludlow* v. *Simmonds*, 2 *Caines' Ca. in Error*, 29; *Miller* v. *Stewart*, 9 *Wheat.* 680, 703; *Dobbin* v. *Bradley*, 17 *Wend.* 422, 425.)

An accommodation acceptor who pays a bill may recover in assumpsit for money paid against the person *for whose benefit and at whose request* the bill was accepted and paid, whether such person be a party to the bill or not. The action in such case is not on the bill, but is based on the request to accept, and

on the principle that the payment was to the defendant's use, and if it appear that it was in fact paid at the request and for the use of another, and not of the defendant, he is not liable. Here the testimony disclosed that the acceptance and payment were for the accommodation and for the sole account and use of Norton, Bartle & McNeil, pursuant to a precise and distinct arrangement between the plaintiffs and that firm, to which arrangement the defendant was not a party and in which he had no interest. (*Cornwall* v. *Gould*, 4 *Pick.* 444; *Chitty on Cont.* 5th Am. ed. 504; *Straton* v. *Rastall*, 2 *Term R.* 366; *Marriot* v. *Lister*, 2 *Wils.* 147 ; *Wells* v. *Girling*, 8 *Taunt.* 737; *Chitty on Bills*, 8th ed. 216; *id.* 568.)

But the bill was not an accommodation bill. Norton & Co. had an open account with the plaintiffs for property which they had sent and were about to send them, and the general balance was secured by mortgage. (*Bagnall* v. *Andrews*, 7 *Bing*. 217.) But conceding that the plaintiffs as well as the defendant were sureties for Norton, Bartle & McNeil, their rights as between themselves must be determined by their position upon the paper. (*Craythorne* v. *Swinburne*, 14 *Ves.* 160 ; *Longley* v. *Griggs*, 10 *Pick.* 121; *Harris* v. *Warner*, 13 *Wend.* 400.) The case presents the same legal question as if the plaintiffs had lent their promissory note to Norton, Bartle & McNeil, payable to the joint order of that firm and the defendant, and had paid it at maturity. No one can pretend in such a case that the defendant would be liable.

3. An agreement by the defendant to pay this debt would be collateral to the express promise of Norton & Co. and unless evidenced by writing would be void within the statute of frauds.

BOCKEE, Senator. It is an elementary rule of law, that the acceptor of a bill of exchange stands in the same relation to the drawer that the maker of a promissory note does to the payee and endorsee. The acceptance is *prima facie* evidence of funds in the hands of the drawee, and payment discharges the obligation and cancels the security. The bill has regularly performed its office, and becomes null as to all the parties. The drawers

are as fully discharged as the endorsers of a promissory note would be on payment by the maker.

Such would be the consequence arising upon the face of this transaction, independent of extrinsic evidence. But the legal presumption that the acceptors had funds of the drawers is done away by proof. The plaintiffs have paid the amount of this bill for the benefit of the drawers, and at their request. An action of *indebitatus assumpsit* may be maintained for money paid. The bill is then only a voucher, or link in the chain of evidence, to show that money has been paid at the request of the drawers. The bill is an open letter of request for the payment of money; and in the ordinary case of several persons joining together in drawing a bill upon a person with whom they have no funds, they are jointly and equally liable to the acceptor who advances the money on the strength of their credit. I presume these general rules will not be controverted, and they apply to this case, unless some special reason to exempt it from their operation is shown on the part of the defendant in error.

If it had been intended that Westfall should be liable only to the payee or holder of this bill of exchange, he might have *endorsed* it. He then would have been surety for Norton, Bartle & McNeil to the endorsees, but in no event liable to the drawees. His responsibilities, then, to all the parties to the bill, would have been exactly those which he now claims. But is there no difference between the endorser and the drawer of a bill of exchange? The drawer of a bill is to be considered, as regards the holder, in the same light as the endorser of a promissory note, and is to be made liable as such. And there is this further responsibility: if he draws without having funds in the hands of the drawee who accepts and pays, there is a resulting obligation imposed upon the drawer to refund. I quote the following language from the opinion of the supreme court: "Where a man puts his name in a position to be charged as endorser on negotiable paper, he cannot be changed into a guarantor." "If he puts his name as endorser, he is an endorser only; if as drawer, it would seem to follow that he shall be holden as drawer only, by an action on the bill itself." The principle of

this rule is, that a party shall be held liable as endorser or drawer, according to the character he has assumed and the position in which he has placed himself. The rule savors of judgment and good sense, and if it had been carried out by the supreme court, it must have led them to different conclusions. " If a man subscribes as drawer of a bill, it would seem to follow that he shall be holden as drawer only, by an action on the paper itself." This is true as regards any action by the holder of this bill. But the qualification " that the action must be on the paper itself," is not true as regards the liability of the drawer, either as principal or surety, to the acceptor who has advanced the money. Such acceptor may maintain an action against the drawer, not upon the bill, but for the money which he has advanced to discharge the bill. This is the known necessary legal consequence of a man's putting his name in the position and character of drawer of a bill of exchange. Now to apply the admitted rule that a party shall be holden according to the position in which he has placed himself. The defendant in this suit has become a drawer without funds, with all the liabilities and incidents pertaining to the character of drawer. He is a surety drawer, putting himself in the same position, on the same platform with his principal. I can see no reason why his liability should not be commensurate with theirs. Mr. Justice Cowen in giving the opinion of the court remarks, " That it is not necessary, in the instance before us to declare that a drawer, though a surety, with such privity as to know that he is overdrawing, can escape an implied engagement as guarantor." Admitting, as the court seem to admit, that with this knowledge the surety co-drawer would be liable to the acceptor, on an implied assumpsit, for the money advanced to discharge the bill, I do not perceive that there can be any difficulty in maintaining this action. For when Westfall signed the bill payable at four months, he must have known that the drawers had no present available funds in the hands of the drawees. It was the duty of the drawers to transmit funds to meet the bill at maturity. These persons are bound together as drawers and as principals. When the plaintiffs advanced the money to discharge this bill,

it was advanced not for one but for all the drawers. It was a new and original cause of action springing out of the bill, and the default of the drawers, and for their common benefit, by discharging the obligation which they would otherwise incur to the holder; and this is done on the joint request of all the drawers, expressed on the face of the bill. Has not Westfall, by placing himself in the position of drawer of the bill, assumed a joint liability with his co-drawers for all purposes and to the same extent? On what ground can a discrimination be made? How can we vary the responsibilities which Westfall is under, unless we take the liberty to change his position and make him an endorser instead of drawer of this bill? And then we go counter to the correct doctrine which the supreme court have laid down in this very case, that when a person puts his name on negotiable paper, he should be held liable as endorser or drawer according to the character and position which he has assumed. It is argued on the part of the defendant in error, that the acceptors have made themselves primarily liable in the same manner as if they were the drawers of a note lent to Norton, Bartle & McNeil, of which they and Westfall were the payees and endorsees. Surely there is no analogy between the cases. The endorser of the note stands in a very different relation to the maker, from that of the drawer of a bill to the acceptor who has paid the bill from his own funds. The endorser of a note is in no event liable to the maker. The drawer is of course chargeable with the amount of the bill which has been paid by the drawee; and I do not see how this defendant can be excepted from the operation of this general rule.

Much of the difficulty of this case appears to me to have arisen from confounding the analogies and differences which exist between bills of exchange and promissory notes. As relates to all intervening parties the acceptor of a bill of exchange is considered to stand in the same position as the maker of a promissory note. The drawers are in the character of endorsers. But this analogy ceases when the acceptor has paid the bill from his own funds. The relation between the drawer and the drawee is then reversed and the former becomes the debtor. It is incor-

rectly assumed by the supreme court, that Westfal. became surety at the request of the plaintiffs, and that it was their duty to have informed him that his principals had overdrawn. It was impossible for the plaintiffs to know who would be considered responsible as undersigners. There was no false color held out, no concealment or subterfuge practised by the plaintiffs to induce Westfall to become surety. It was impossible for them to communicate to the whole world the facts which the court say ought to have been communicated to Westfall. They say in substance to the cashier of the Geneva Bank, "We distrust the credit of Norton, Bartle & McNeil. We will not accept their drafts unless undersigned by such person as you consider perfectly responsible." The bill payable at four months, with Westfall's name as undersigner or co-drawer, or surety drawer, is disconnted at the Geneva Bank, and is accepted and paid at its maturity by the plaintiff. The plaintiffs might or might not have known Westfall was a surety. For aught which appears on the face of the transaction, he might have been a party in interest, and have received the avails of the discount. But he was in fact a surety; and admitting that such was known to the plaintiffs, I think it can make no difference in the case. It appears to me to be the proper form in which security should be given to indemnify the acceptors. A loss is sustained by the bankruptcy of Norton, Bartle & McNeil, and who shall suffer? The plaintiffs were unwilling to trust them, but were willing and did pay the draft with Westfall as undersigner. When Westfall signed the bill, payable at four months, he must have known that Norton & Co. had no funds in the hands of the drawees, and that unless funds were duly remitted, one of these two consequences would follow—either that the bill would be returned dishonored, in which case he would undoubtedly be liable to the holder—or that the drawees trusting to the responsibility of the drawers, would accept and pay the bill. In the latter case, I conceive that the simple act of putting his name as one of the drawers of the bill requesting and directing the plaintiffs to pay one thousand dollars to the order of C. A. Cook, and to charge the sum to the account of the drawers, is sufficient in law

to make the defendant jointly liable with the other drawers for the amount so paid. The case of Westfall, though a surety, is not distinguishable from the other drawers of the bill. He has by his voluntary act placed himself under the same legal liabilities with them both in substance and in form, and by that act has induced the plaintiffs to make advances which they otherwise would not have made, and he should be held responsible. The judgment of the supreme court should be reversed.

FOLSOM, Senator. The only question is as to the liability of Westfall to repay the plaintiffs the amount of the bill. There is nothing that appears on the face of the draft that places his undertaking in a different light from his co-drawers, who were liable on the well settled principle that "the drawer of an accommodation bill of exchange is liable to refund to the drawee who accepts and pays the bill without funds of the drawer." The supreme court, however, in deciding this case, regarded Westfall as a surety, and held that he was not liable to the drawees on the bill. Doubtless the undertaking of Westfall was for the purpose of adding strength to the other names on the bill, but this does not necessarily render him merely a surety. The manner in which his name appears on the draft raises no such idea. The word *surety* is not appended to it, and the amount paid, or to be paid, is directed to be charged to his account as well as to that of his co-drawers. This was not done to obtain credit at the bank, but to meet the express conditions of the letter of credit, which Westfall must be presumed to have seen, and inspire confidence in the drawees. It had the desired effect; the plaintiffs paid the full amount of the bill without funds, relying for repayment, in case of the default of the firm, on the faith of their co-drawer, represented to be perfectly responsible.

I can see no distinction between the liability of the firm and that of Westfall. All seem to me to be jointly liable to refund to the drawees the full amount of the draft. The interchange of business transactions between parties at different and remote points of the state, requires mutual confidence; and whatever

tends to impair that confidence, raises a serious obstacle in the way of commercial intercourse, and checks individual as well as public enterprise and prosperity. Good faith between man and man must be maintained, and no shift, or pretence, however plausible, should be allowed to excuse, much less to justify, an attempt to avoid meeting an honest obligation, deliberately assumed, and springing from the necessity of mutual confidence. For these reasons I am of the opinion that the judgment of the supreme court ought to be reversed.

PORTER, Senator. The plaintiffs seek in an action for money paid, laid out and expended for the defendant, to recover from him the amount of a draft or bill of exchange, signed by Norton, Bartle & McNeil, and also by Westfall, on the ground that they were accommodation acceptors, and were compelled as such acceptors to pay the bill. Westfall joined in drawing the bill as surety for his co-drawers ; and this was well known to the plaintiffs at the time they accepted it. There is no evidence, or ground for presumption, that Westfall had any knowledge of the state of the accounts between the plaintiffs and Norton, Bartle & McNeil. The facts proved show that all the knowledge was on the side of the plaintiffs, and that Westfall stands before the court as one of the drawers of an accommodation bill, and as surety for his co-drawers; but without any knowledge that the drawees had no funds of his co-drawers in their hands to meet the bill. The bill was discounted at the Bank of Geneva, to whose cashier it was made payable, on the application of Norton, Bartle & McNeil, and the proceeds were paid to them. It was accepted and paid by the plaintiffs, and the payment charged in account with Norton, Bartle & McNeil ; and there is no pretence but that they received the whole use and benefit of the payment. The question presented for the decision of the court is, whether under this state of facts the plaintiffs can maintain an action against Westfall for money paid for his use.

The legal effect of drawing a bill of exchange is, to cast upon the drawer these obligations: First, he engages that the drawee shall accept and pay the bill according to its terms ; secondly,

in case of failure on the part of the drawee, and on due notice given to him of such failure, that he will pay the bill to any holder thereof. But the act of drawing can never, of itself, create an obligation to pay the acceptor such sum of money as he shall pay upon the bill. That would be inconsistent with the very nature of the transaction. The bill neither expresses nor imports any promise as between the drawers and drawees. It is merely a request or direction by the drawer, addressed to the drawee, to pay to the person named therein, or bearer, or to his order, a sum of money; which money in legal contemplation is the money of the drawer in the hands of the drawee, and subject to the order of the drawer. The bill amounts merely, so far as the drawee is concerned, to an assignment or transfer, of so much of the drawer's funds in possession of the drawee, for the use of the payee or holder of the bill. Such and such only is the contract of the drawer, while he preserves the mercantile character of the bill.

In the next place, what are the obligations of an acceptor of such a bill? When the drawee accepts, he promises to pay to the holder the amount of the bill. This is an absolute promise, sustained by the presumed fact that he has the funds of the drawer to at least that amount in his hands; and by such acceptance he acknowledges that he holds them for the use of the holder of the bill; and he will not be permitted to allege the contrary. Indeed by the act of accepting he enters into a contract, not only with the holder, but with the drawer also, that he will pay the bill. If he refuses, and the drawer is compelled to take it up, he can sue the drawee on the acceptance; and proof of the acceptance is *prima facie* evidence to sustain the action. It will therefore be apparent, that the facts of drawing a bill of exchange, acceptance and payment by the acceptor, can never of themselves create any liability on the part of the drawer, to pay money to the drawee or acceptor. So far as the bill is concerned the whole transaction is at an end by its payment by the acceptor. He has only paid a debt which he by the very act of accepting acknowledges to be due to the drawer.

I have thus referred to the legal position of the drawer, and

to the obligation of the acceptor of an ordinary bill of exchange, because it is necessary to keep these in mind while deciding upon the liability of the defendant in this case. When a bill is accepted for the accommodation of the drawer and paid by the acceptor, an entirely different state of things arises. The ordinary rights and liabilities of the parties to the bill are all reversed. He who would otherwise have been the creditor, is now the debtor. Consequently the rules applicable to the parties to a regular mercantile bill are no longer applicable to the new contracts raised by law. An implied contract is then raised upon the payment by the acceptor, that the drawer will indemnify the acceptor. The money paid is the money of the acceptor, and is paid for the use of the drawer; and hence the obligation to refund it is unquestionable. Such is the position in which Norton, Bartle & McNeil stand towards the plaintiffs; for the reason that the plaintiffs have paid their own money for the use and at the request of that firm. They knew they had no funds in the plaintiffs' hands, and of course undertook to refund any thing they should pay on the bill. Is there also the same obligation resting on the defendant? Look for a moment at his position when he was asked to join in drawing this bill, and see what obligations he then assumed. Every man is presumed to know the law, and to assume the same obligations which the law attaches to his acts. When he was asked to become a joint drawer of this bill, what was he to infer in respect to the business relations between Norton, Bartle & McNeil and the plaintiffs? He should have assumed and no doubt did assume that they had funds in the hands of the plaintiffs; and that they drew upon those funds; that they desired to use those funds immediately, and for that purpose they had drawn the bill with a view to its discount at the bank; and that his name was desired on the bill to give it additional credit at the bank and in its circulation afterwards. And he would also, reasoning upon the legal effect of his act of drawing, understand and properly assume that when the bill should be paid by the drawees, his liability for the payment of the money mentioned in it would be discharged; and for the very simple reason

that the contract he had made, to wit, that the bill should be accepted and paid, had been performed. I am unable to perceive that the defendant ever promised the plaintiffs to refund this money. He never knowingly drew an accommodation bill on them. He never received any of the money raised by the bill; and this the plaintiffs well understood before they paid it. The plaintiffs never paid any money for his use or benefit, and never supposed when they paid this bill that they were paying money for his use. They never charged this payment in their books of account to the account of the defendant. When an accommodation acceptor sues to recover the money paid, he never brings his action upon the bill; but upon the implied undertaking of the drawer to refund the money paid for his use. And when these plaintiffs knew that this money was not paid for the use of the defendant, but that it was paid for the use of the other drawers only, how can an assumpsit be implied on the part of the defendant? The case of *Griffith* v. *Reed*, (21 *Wend.* 502.) and the authorities cited in that case, fully sustain the views above expressed.

But the counsel for the plaintiffs insist that the supreme court have in that case as well as in this, mistaken the true theory of bills of exchange in this respect; that they do not recognize this principle, that an acceptance is made upon the *personal credit* of the drawers. The late Mr. Justice Story, in his work on Bills of Exchange, § 400, has given countenance to this position by the manner in which he speaks of the case of *Griffith* v. *Reed.* After very briefly stating the case and decision, he remarks: " But it may be doubted whether this doctrine is sound; for all the drawers must be taken to be drawers of the bill *as to all parties ;* and the acceptor may have been induced to accept the bill quite as much as the payee or other endorsee to take it, because Westfall thereby became liable to him as surety for its due payment in the character of a joint drawer." I cannot appreciate the force of this remark. The payee and any endorsee of the bill could have resorted to Westfall for payment in case it had not been paid by the acceptor, because that was his express undertaking, and they would have received

Suydam *v.* Westfall.

the bill upon the credit of that undertaking. But does the bill import any such contract with the acceptor if he pays it? If so, then he might have maintained an action on the bill to recover back the money he paid. But I apprehend that according to the true theory of bills, acceptances are not made upon the personal credit of the drawers. In practice do drawers presume to issue their bills upon their mere personal credit? Such may be the case at times; but if so, I suspect they are exceptions, and rare exceptions to the general rule. The history of bills of exchange shows the contrary. They are always presumed in law to be drawn upon the funds of the drawer. And so much does this fact enter into the contemplation of the parties to a bill, that in actual practice it is believed that an accommodation acceptance never takes place, except under some special arrangement entered into for that purpose, as in this very case. In ordinary mercantile business no man who values his reputation would presume to draw upon another for the payment of money unless the drawee has in possession the funds of the drawer, or has an understanding with him that he will accept for his accommodation. And whenever such an arrangement takes place, the acceptance is made upon the credit of the arrangement, and not on the credit of the names that appear as drawers on the bill. I must, therefore, but with great deference, dissent from the position of that very learned judge.

I do not feel constrained to resort to the argument to be derived from the fact that the defendant was surety only, and known by the plaintiffs to be such; and that therefore his contract is not to be enlarged by implication. The contract he actually made was plain and clear, and well understood. There were no facts in the case in relation to him that could raise an implied contract. I am of opinion that the judgment of the supreme court should be affirmed.

On the question being put, "Shall this judgment be reversed?" the members of the court voted as follows:

*For reversal:* Senators BACKUS, BOCKEE, CHAMBERLAIN, DEYO, EMMONS, FAULKNER, FOLSOM, LOTT, SMITH, VARNEY—10.

*For affirmance:* Senators BEEKMAN, BEERS, BURNHAM, HARD, MITCHELL, PORTER—6.

Judgment reversed.