## WRIGHT *vs.* J. GARLINGHOUSE.

Where a bill of exchange was drawn by L. B. G. upon H. & H., and was also signed by J. G. as surety, and subsequently by the plaintiff as surety for J. G., and was accepted by the drawers, and paid by them at maturity, without funds; *Held* that the plaintiff and J. G. occupied the same relation, and were under the same liabilities to the acceptors, as L. B. G. the principal drawer, and were each liable to the acceptors for the amount of the draft; and the plaintiff having paid to the acceptors a certain amount to take up the draft, it was further *held* that he, as the surety of the defendant, had the right to call on him to refund what he had thus paid.

*Held also*, that the fact that the plaintiff had put his name to the bill as surety for the defendant without the request or knowledge of the latter, could make no difference in respect to the defendant's liability to reimburse the plaintiff.

THE complaint in this action contained two counts. The first count stated that on the 21st day of September, 1850, the defendant made a draft which the plaintiff signed as surety for him, of which the following is a copy:

"Rochester, Sept. 21st, 1850.

Two months after date please pay to the order of Ralph Lester, Esq. two thousand dollars for value received, and charge the same to the account of your obedient servant,

L. B. GARLINGHOUSE.

J. GARLINGHOUSE, surety.

GEO. WRIGHT, surety for the above surety.

To Hicks & Hathaway, Boston."

And for value received and in the due course of business delivered the same to said Ralph Lester, who indorsed the same, and for value received ordered the moneys thereon to be paid to C. P. Bissell, cashier; that the said draft was duly accepted and paid to the holder thereof by the said Hicks & Hathaway, and that at the maturity of the same, the plaintiff paid the amount thereof to the said Hicks & Hathaway; that said draft was not drawn upon funds in the hands of said Hicks & Hathaway, but was accepted by them as a loan upon the credit of the same, and that by the payment of the same on

the part of the plaintiff as aforesaid, the defendant became liable to pay and refund the amount of said draft, principal and interest, of which he had notice.

The second count stated that on the 20th of March, 1852, the plaintiff paid the sum of $2044.31, as the surety for the defendant and at his request and in and about his business, whereby the defendant became indebted to the plaintiff in the sum last mentioned. The complaint, after alleging the non-payment of said sums of money, concluded with a demand of judgment for $2044.31, with interest from March 20, 1852, besides costs. The defendant's answer was a general denial of each and every allegation in the complaint.

The action was tried at the Ontario circuit, in November, 1856, before Mr. Justice SMITH and a jury. The counsel for the plaintiff, in opening the case, stated that the action was brought by the plaintiff to recover of the defendant the amount paid upon a certain bill of exchange upon the following state of facts : In the year 1850 Leman B. Garlinghouse was engaged in the purchase of wheat and the manufacture of flour, at Hopewell, which he consigned to the house of Hicks & Hathaway of Boston, for sale on commission, and was in the habit of drawing his drafts on Hicks & Hathaway in the course of their business. That on the 21st day of September, 1851, Leman B. Garlinghouse made his draft on Hicks & Hathaway, payable to the order of Ralph Lester, two months after date, for $2000, a copy of which draft was set forth in the complaint. That the defendant Joseph Garlinghouse signed the draft as surety, and afterwards, and before the same was negotiated, the plaintiff, without the knowledge or privity of the defendant, signed the draft as surety for the surety. That the drawer, L. B. Garlinghouse, took the draft to Mr. Lester and negotiated it, receiving the proceeds of the draft from Lester. The draft went forward to Hicks & Hathaway, was accepted by them, and at its maturity was paid by them. That at the time of the acceptance and payment of the draft, Hicks & Hathaway had no funds of Leman B. Garlinghouse in their

hands, and the same was accepted under an agreement between Hicks & Hathaway and said Leman B. Garlinghouse. Subsequently, the plaintiff paid to Hicks & Hathaway the sum of $1720.70 and took up the draft, and he brought the action to recover the amount so paid, with interest.

The defendant's counsel thereupon moved the court that the plaintiff be nonsuited upon the following grounds:

*First.* That the plaintiff could not recover upon the first count of the complaint, for the reason that the acceptance and payment of the draft by the drawees extinguished the liability of the plaintiff and defendant upon the draft. *Second.* That the contract of the defendant upon the draft was discharged, and his liability ended, by the acceptance and payment of the draft by the drawees. *Third.* That the subsequent payment of the money to Hicks & Hathaway, by the plaintiff, did not raise any liability of the defendant to the plaintiff upon the draft. *Fourth.* That the plaintiff could not recover upon the second count in the complaint, as the money paid by the plaintiff to Hicks & Hathaway was not paid at the request of the defendant, nor as the surety of the defendant. That there was no contract between the plaintiff and the defendant.

The court denied the motion of the defendant for a nonsuit, to which the defendant's counsel excepted. The defendant's counsel then admitted the facts to be as stated by the counsel for the plaintiff in his opening, and the plaintiff's counsel claimed that he was entitled to recover the whole amount paid by the plaintiff to Hicks & Hathaway; or, if not, then that he was entitled to recover the one-half of such amount paid by him, as the contributive share of the defendant as co-surety with the plaintiff; to each of which claims the defendant's counsel objected, upon the same grounds stated on the motion for a nonsuit. The court thereupon directed the jury to find a verdict for the plaintiff for the sum of $2274, being the amount paid by the plaintiff to Hicks & Hathaway, with interest. To which direction of the court the defend-

ant's counsel duly excepted. The jury, under such direction of the court, rendered a verdict for the plaintiff for $2274. The court allowed the plaintiff to enter judgment upon the verdict, with a stay of all proceedings thereon until the decision of the court at general term, on the case to be made. The plaintiff thereupon entered and perfected judgment upon the verdict, from which the defendant appealed.

*H. O. Chesebro,* for the appellant.

*J. C. Smith,* for the respondent.

*By the Court,* WELLES, J. The general principle of law, that the acceptor of a bill of exchange stands in the same relation to the drawer that the maker of a promissory note does to the payee and indorser, is too well settled to require any authority to prove it. The acceptance is prima facie evidence of funds in the hands of the drawee, and payment by him discharges the obligation and cancels the security. It is equally well settled that where the drawee accepts and pays without funds of the drawer in his hands, although an action may not be maintained directly upon the bill, yet the drawer is liable to the acceptor as for money paid for him at his request. The bill in such case is not the foundation of the action, but is good evidence that the money was paid *at the request of the drawer.* So far, I believe, the cases all substantially agree.

In the case of *Griffith and others* v. *Reed and Dixson,* (21 *Wend.* 502,) this doctrine of the liability of the drawer, in case of acceptance and payment by the drawee without funds, was held by the supreme court not to apply to a person who signed the bill as surety for the principal drawer, and that such surety for the drawer entered into no obligation whatever to the acceptor ; that his liability was confined to the payee, indorsee or holder, and that when the bill was accepted and paid, his liability was at an end, whether the acceptor paid *with or without funds.* The case of *Griffith* v. *Reed and Dix-*

*son* was soon followed by that of *Suydam and others* v. *West-fall,* (4 *Hill,* 211,) where the same doctrine was held by the supreme court in discharge of a surety drawer. According to these cases, the defendant, in the present case, under the facts admitted, would be exonerated. In both the cases referred to, the drawees had accepted and paid the bills without funds, and it was held by the supreme court that such payment by the drawees discharged the surety drawers from all the liability which they incurred by signing the bills, solely on the ground of their having signed them as surety for the principal drawers, with the knowledge of the drawees at the time they accepted the bills. According to the principles enunciated in these cases, this defendant, under the facts admitted, would be released. His character as surety for the principal drawer appeared on the face of the bill at the time of its acceptance by the drawee. And as the plaintiff stood in the same light and his character of surety was equally apparent, the payment by him to the drawees was voluntary and the defendant is not affected by it.

But the case last referred to, of *Suydam* v. *Westfall,* was afterwards taken to the court for the correction of errors, where the judgment was reversed, (2 *Denio,* 205,) that court holding, in substance, that a surety drawer occupied the same relation and was under the same liabilities in all respects to the acceptor, and all other parties to the bill as the principal drawer sustained; and that where the acceptor pays without funds, the surety, as well as the principal drawer, is liable to him to refund, on the ground that the payment was at the request of the drawers, sureties as well as principals; and that the law implies a promise by them all, in such case, to indemnify the acceptor. This decision of the court of last resort is in point in the present case, and settles the liability of the surety drawers of the bill in question. We are not at liberty to disregard its authority, but are bound to receive it as the law governing the principal question before us.

The plaintiff and defendant thus being each liable to Hicks

Wright *v.* Garlinghouse.

& Hathaway for the amount of the draft, the plaintiff has paid them a certain amount to take it up, and has canceled the liability of all the drawers to the acceptor; and as his liability was that of surety for the defendant he has the right to call on him to refund what he has thus paid. The fact that the plaintiff put his name to the bill as surety for the defendant without the request or knowledge of the latter, can make no difference. He was nevertheless liable to the acceptor; and a compulsory payment, or a payment without action, of a legal liability is equivalent to a payment by request, in a case where a request by the person to be benefited by the payment, or who is legally discharged from an obligation by such payment, is necessary to render the person thus benefited or discharged liable to an action for the amount paid. Upon payment of the draft by the acceptor, in this case, the defendant was absolutely liable to him for the amount of the bill, with the right to look at once to the principal drawer for the amount paid by him in discharge of his obligation to the acceptor; but with no right over against the plaintiff. So the plaintiff was in like manner liable to the acceptor upon payment of the bill by the latter, with the right to call on the defendant for whatever he has paid in discharge of his liability to the acceptor. Hence it is laid down that where one is compelled to do for another what that other should do and was compellable to do, the law implies not only a previous request that the thing should be done, but a promise to compensate for doing it. (1 *Parsons on Contracts,* 392.)

We are of the opinion, therefore, that there was no error committed at the circuit, and that the judgment should be affirmed.

[CAYUGA GENERAL TERM, June 7, 1858. *Welles, Smith* and *Johnson,* Justices.]