(Superior Court of Cincinnati.)
Special Term, 1898.

ARTHUR STEM, a taxpayer of the city of Cincinnati, on behalf of the city of Cincinnati, v. THE CITY OF CINCINNATI, and A. B. Ratterman, Amor Smith, Jr., J. J. Grogan, Samuel Nieman, I. J. Miller and James M. Glenn, constituting the Board of City Affairs of the City of Cincinnati, Henry P. Boyden, Auditor, and E. O. Eshelby, Treasurer of the City of Cincinnati,.

---

(1.) The difference between a directory and mandatory provision in a statute is that while the legislature in both instances, intends that its commands shall be obeyed, an omission in the case of a statute that is directory does not invalidate the proceeding of which it is a part, while in the

[COPYRIGHT, 1899, BY CARL G. JAHN.]

case of a mandatory statute the omission to follow it renders the proceeding of which it is a part illegal and void.

(2.) In matters of taxation where the requisitions prescribed are intended for the protection of the citizen and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected such requisitions are not directory but mandatory.

(3.) The estimates required by sections 2690 a, to 2690 q, and the appropriations therein provided for are mandatory so far as any municipal expenditure is concerned. Whether the failure to observe them would affect the validity of a tax levy. Quere?

(4.) The requirement of the statute that the appropriating ordinance shall be detailed and specific is also mandatory. Ampt v. Brown Auditor, 5 Nisi Prius 98 re-examined and followed.

(5.) The transfer from one fund to another or from one department to another department falling under the same fund are forbidden by the statute.

(6.) An appropriation of $10000.00 which merely states that it is "For extra expenses to be incurred during the Grand Army of the Republic Encampment in Cincinnati" is not sufficiently detailed and specific to meet the requirements of the statute.

(7.) Money raised by taxation cannot be expended in the entertainment of public guests. Such an expenditure is beyond the power of a municipality.

(8.) The decision to hold the Grand Army Encampment in Cincinnati not having been reached until after the estimates for the year 1898 had been made, and after the appropriation for the first half of the fiscal year of 1898 had been made whatever increase in the legitimate municipal expenditures will be required by reason of such event may be paid out of the contingent fund.

---

SMITH J.

The petition in this case alleges that the plaintiff is a taxpayer and citizen of the city of Cincinnati; that he has requested the Corporation Counsel of the city to bring this action; and that the Corporation Counsel having refused so to do, he brings the action on behalf of the city of Cincinnati, as is provided in such cases by sections 1777 and 1778 of the Revised Statutes of this state.

The object of the action is to enjoin the city authorities from expending the sum of $10,000.00, or any part thereof, this amount having been appropriated by the city authorities in July 1898, to be used "For extra expenses to be incurred during the Grand Army of the Republic Encampment in Cincinnati to be held in said city in September, 1898."

The case comes before me upon a motion for a temporary restraining order upon the allegations of the petition, which for the purposes of this case must be admitted to be true.

The objections to the validity of the action of the city authorities in making such appropriation may be classified as follows:

I. That no estimate of expenditures preceded the appropriation

II. That the appropriation is not detailed, specific and explicit.

III. That there is not sufficient money in the fund from which it is attempted to take this appropriation to pay the same.

IV. That the purpose of the expenditure is beyond the scope of the powers of a municipal corporation.

A clear understanding of the points of law presented by the case and a correct disposition of the same requires a knowledge of the general plan provided by the statutes of this state for the raising and disbursement of the public revenue in cities of the first grade and the first class, and I therefore find it is necessary, as briefly as possible, to proceed first to an examination of such general plan.

The first requirement for the raising and disbursement of the revenue for any year is that on or before the first Monday in March in each year, the authorities of all the city institutions, except the Board of Education (which makes its own levy), as well as every head of a department or office in the city, for whose wants provision is to be made, shall report to the City Auditor the amount of money needed for their respective wants for the ensuing year; said estimate to be given for each month. Section 2690-i.

The Auditor having received the estimates of the various departments furnishes to the Board of Legislation and the Board of Supervisors the following statements:

"1. A statement showing the balance standing to the credit or debit of the several funds on the city balance sheet at the end of the last fiscal year immediately preeding said first Monday of April.

"2. A statement showing the monthly expenditure out of each fund in the twelve months and the monthly expenditure out of all the funds in the twelve months of the fiscal year immediately preceding said first Monday in April.

"3. A statement showing the annual expenditure from each fund for each year for the five fiscal years preceding said day.

"4. A statement showing the monthly average of such expenditure from each of the several funds for the preceding fiscal year, and also the total monthly average from all of them for the five preceding fiscal years.

"5. A statement containing an approximate and detailed estimate of the money needed to pay all lawful expenses of the city and its several departments, offices and institutions for each of the twelve months following of the current and succeeding fiscal year, and in calculating the amount of money needed he shall take into account the money then in the treasury, as well as that collectible in June following, and also the probable proceeds from the tax levy of that year as he shall estimate the same as

hereafter required, and all other sources of revenue to the city. He shall be equally careful to avoid surpluses and deficits, and shall treat as means available for current expenses the June and December collections as soon as under the laws and usages he has a right to presume them to be in the treasury without waiting for their subsequent distribution to the respective funds.

"6. A statement estimating the total percentage he deems necessary to be levied in that year, so as to provide sufficient means for paying city expenses for the fiscal periods named for statement number five, and he shall also report in said statements to what funds and in what proportions said total levy should, in his opinion, be apportioned as special levies. And in all other cities having a board of tax commissioners in pursuance of this act, said board is hereby authorized to call upon any city officer or board for such information as it may deem necessary to the discharge of its duties, and it is hereby made the duty of such officer or board to furnish such information as required." Sec. 2690-f.

The Board of Legislation and the Board of Supervisors having received these statements, embracing as they do the estimates of the Auditor of the amounts necessary to be raised for the various purposes of the city, it becomes the duty of such boards to carefully examine and revise such statements; and after the Board of Legislation has determined the percentage to be levied for the several purposes allowed by law, such percentage is forthwith submitted to the Board of Supervisors who are required by law within ten days after such submission to return the same to the Board of Legislation with their approval or rejection; in case of rejection giving their reasons therefor. They may approve or reject any part or parts thereof, and the parts rejected by said board shall not become valid levies. Section 2690-g.

The purpose of the estimates is declared in sec. 2690-i to be "to enable the City Auditor and the Boards of Legislation and Supervisors to estimate correctly the levies and appropriations", and the standard of correctness is found in the concluding part of the same section which declares that the Auditor as well as the Boards of Legislation and Supervisors "shall revise them and if deemed proper shall reduce them so as to prevent unnecessary expenditure, and to bring them within fair limits to the other expenditures required by the city."

The steps thus far described are sufficient to enable the proper boards to make the levy, which, when made, is certified to the county Auditor and placed by him upon the tax duplicate as a part of the grand levy upon all taxable property, both real and personal, of the city.

But while the steps thus far described are sufficient to justify the levy, they are not sufficient to entitle the various departments to expend any of the money raised by the levy. Before any expenditures can be

made, the Boards of Legislation and Supervisors semi-annually must pass an appropriating ordinance for each fiscal half year, in which appropriating ordinances a detailed and specific appropriation must be made for the several objects for which the city has to provide. The language of the statute upon this subject is as follows:

"In all cities of the first grade of the first class the Board of Legislation shall make by the first week of each fiscal half year detailed and specific appropriations for the several objects for which the city has to provide, apportioned to each month, of the moneys known to be in the treasury, or estimated to come into it during the six months next ensuing, including in their estimate the next semi-annual collection of taxes and all other sources of revenue, and be careful to provide in their appropriations for every legitimate city expenditure, and to apportion the means fairly and legally among such expenditures, and their action thereon they shall transmit to the Board of Supervisors for approval, amendment or rejection as they may determine. All expenditures within the following six months shall be made in accordance with and within said appropriations. Balances thereof or credits remaining over at the end of the year shall then no longer be open for payment therefrom, and shall be recredited to the funds from which they were taken." Sec. 2690-h.

If the statement above made as to the method of making expenditures stood alone, it is apparent upon slight reflection that such method might be defective in undertaking to provide in advance for every city expenditure when contingencies not foreseen and calling for expenditures should occur, and no money could be used to meet them. To avoid this defect, it is further provided in sec., 2690-h, that a contingent fund of $50,000 annually shall be created, from which such unforeseen contingent expenses shall be made. The provision in the section upon that subject reads as follows:

"But in making the semi-annual appropriation and apportionment hereby required it shall be the duty of the Board of Legislation to deduct and set apart out of the fund for general purposes the sum of twenty-five thousand dollars as a contingent fund to provide for any deficiency in either of the detailed and specific appropriations so to be made which may lawfuly and by any unforeseen emergency happen, which contingent fund and any part thereof, may be expended for any such emergency only by an ordinance first recommended by the Board of Administration passed by the votes of two-thirds of all the members of the Board of Legislation and approved by the Mayor, or in case of his disapproval, upon its passage over his veto, in the manner provided by law."

Having seen the general plan for the raising and disbursement of municipal taxes, the next inquiry that naturally arises in the case is—to what extent, if any, does the omission of any step prescribed by the statutes prevent the city authorities from making expenditures from the various funds raised by such taxation? In other words, which provisions are directory and which are mandatory?

The questions raised in this case do not call for an opinion upon that question so sweeping in character as to include all the provisions of the statutes which have been referred to. It will be sufficient to determine the question only so far as the provisions of the statute are involved in the points at issue in this case.

The difference between a directory and mandatory provision in a statute is that while the legislature intends in both instances that its commands shall be obeyed, an omission in the case of a statute that is directory does not invalidate the proceeding of which it is a part, while in the case of a mandatory statute the omission to follow it renders the proceeding of which it is a part illegal and void.

There is no universal rule by which directory provisions under all circumstances may be distinguished from those which are mandatory. Sutherland on Statutory Construction, sec. 447. But in each case the character of the statute is determined by a consideration of its language taken in connection with the purpose which the legislature had in view by its enactment.

The general rule by which the character of a statute relating to taxation is determined may be understood from the decisions in the following three cases which I select from a large number in which the same principle is declared. These cases are French v. Edwards, 13 Wallace, 511; Torrey v. The Inhabitants of Millbury, 22 Pickering, 64, and State Auditor v. Jackson county, 65 Ala. 142.

In French v. Edwards the court declared, "There are undoubtedly many statutory requisitions intended for the guidance of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But where the requisitions prescribed are intended for the protection of the citizen and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise."

In Torrey v. The Inhabitants of Millbury the court announced the same principle in the following language:

"In considering the various statutes regulating the assessment of taxes and the measures preliminary thereto, it is not always easy to distinguish which are conditions precedent to the legality and validity of the tax, and which are directory merely and do not constitute conditions. One rule is very plain and well settled, that all those measures which are intended for the security of the citizen, for ensuring an equality of taxation, and to enable every one to know, with reasonable certainty, for what polls and for what real and personal estate he is taxed, and for what all those who are liable with him are taxed, are conditions precedent, and if they are not observed he is not legally taxed, and he may resist it in any of the modes authorized by law for contesting the validity of the tax. But many regulations are made by statute, designed for the information of assessors and officers, and intended to promote method, system and uniformity in the modes of proceeding, the compliance or non-compliance with which does in no respect affect the rights of tax-paying citizens. These may be considered directory; officers may be liable to legal animadversion, perhaps to punishment, for not observing them; but yet their observance is not a condition precedent to the validity of the tax."

And in State Auditor v. Jackson the rule was declared to be that.

"As a general rule, statutory provisions regulating the assessment and levy of taxes are mandatory, where their object is the protection of the tax-payer against spoliation, or excessive taxation; but regulations designed for the information of the assessor, or other officer, and intended to promote dispatch, method, system and uniformity in modes of proceeding, will be held merely directory, when the assessment is so made and evidenced as to be understood; and clerical and ministerial duties, also, the observance or non-observance of which do not injuriously affect the tax-payer, are merely directory."

To the same effect see Cooley on Taxation 280, and 1 Desty on Taxation 517.

Bearing in mind the principle of construction declared by these cases I proceed to the consideration of the first ground of objection to the appropriation of $10,000,00 complained of, viz: That no estimate was ever made for the same.

The purpose of the estimate is not only of interest to the taxpayer, but is intended as a protection from the extravagant expenditure of the money raised from him by taxation. The entire plan of taxation and disbursement of the money raised by taxation makes this proposition too plain for serious discussion. And if any serious doubt were entertained upon the question it must give way before the express language of the statute, which declares that after the various officials and heads of departments have submitted their estimates the Auditor as well as the Boards of Supervisors and Legislation "shall revise them, and if deemed proper, shall reduce them so as *to prevent unnecessary expenditure, and to bring them within fair limits to the other expenditures required by the city.*"

Furthermore it must be conceded that the passage of the appropriation ordinance by the Board of Legislation and its approval by the Board of Supervisors is a mandatory provision of the statute, because in sec. 2690-J it is expressly declared so in the following language:

"No liability whatever shall be created against any city of the first grade of the first class and no expenditure shall be made for the same except for school and educational purposes as provided for by the boards of Education therein, unless it be previously covered by an appropriation sanctioned both by the board of supervision and board of legislation as above provided except from the contingent fund of twenty-five thousand dollars herein provided for; and any taxes levied for any purpose whatever except for schools and educational purposes as provided for by the boards of education therein in such city without the concurrence of the board of supervisors and board of legislation as herein provided shall be void; and all laws and parts of laws conflicting with the provisions of this act are hereby repealed. Any attempt to create a liability against any such city contrary to the provisions of this act shall be null and void."

As the requirement that an appropriation shall be made before any expenditure can be had is mandatory it would seem strange if the intention of the legislature were to regard the estimate which is such a vital factor in determining the amount of the appropriation as other than mandatory. Any other construction would regard the thing itself as more vital than its source, or than the foundation upon which it rests.

But in my opinion the mandatory character of the provision with respect to the estimate is not determined alone by the general principles of statutory construction on the subject of directory and mandatory statutes, nor from inference from other provisions in the statutes upon the subject of taxation and the disbursement of the money raised thereby, but is declared in express terms by the statute itself.

The sections of the Revised Statutes entitled 2690 a to 2690 q were passed in 1883, vol. 80 page 124 of the Ohio Laws, and constitute what at that time was known as the Tax Commissioners' Act. Among the provisions of this act were all of those to which I have referred in explaining the general plan for the disbursement of the money raised by taxation, including the provision in regard to the making of estimates; and in that act it was declared that "Any attempt to create a liability against any such city contrary to the provisions of this act shall be null and void." Conse-

quently, by the act of 1883 an appropriation without an estimate was null and void; and as the Tax Commissioners' Act has been carried bodily into the Revised Statutes (with such amendments as have been since made) together with the provision that "any attempt to create a liability contrary to the provisions of the act shall be null and void", it is as true to-day as it was in 1883 that an appropriation without an estimate is null and void.

The same conclusion was reached in the case of Wilson v. Anderson 28 La. Ann. 261.

In thus determining that the provision of the statute which requires an estimate is mandatory so far as the making of an appropriation is concerned I do not intend to hold or to express the opinion that such requirement so far as the validity of the tax levy is concerned is mandatory. There would be no inconsistency in holding the provision directory in some respects and mandatory in others. 2 Gray 298; 16 O. S. 184, 191. But I express no opinion upon the question because it is not presented by this case.

I come now to consider the second objection to the appropriation complained of, viz, that the appropriation is illegal and void because it is not sufficiently detailed and specific.

In the recent case of Ampt, a taxpayer, on behalf of the city of Cincinnati, against D. W. Brown, Auditor, reported in V Nisi Prius Reports, page 98, I had occasion to determine the question whether an appropriation that was not detailed and specific was illegal and void and the conclusion reached in that case was that such an appropriation was not valid and could not be upheld.

The requirement that the appropriations shall be detailed and specific is found as we have seen in section 2690-h and we have also seen that in section 2690-j it is further provided that no liability whatever shall be created against the city and no expenditures shall be made for the same unless it is previously covered by an appropriation sanctioned both by the boards of legislation and supervisors *as above provided*; and as the provision above made requires a detailed and specific appropriation, an omission to make such and appropriation is fatal to the right to make an expenditure therefrom.

Such a construction of these statutes is also in harmony with section 1693 which also declares "that every ordinance appropriating moneys shall contain an explicit statement of the uses and purposes for which the appropriation is made"

The purposes to be subserved by the passage of the Tax Commissioners Act lead also to the construction of the statute which makes mandatory the requirement that an estimate shall precede an appropriation, and that the appropriation when made shall be detailed and specific. In stating such purposes in the consideration of the case of Ampt v. Brown, Auditor, I used the follow-

ing language, which, upon a re-examination of the statutes, I endorse and re-adopt as part of this opinion:

"The main purpose of the legislation upon this subject was to secure an economical expenditure of the public funds, for those objects only which a wise and prudent foresight would deem necessary, and to that end to compel city officials in advance of expenditures to make a public declaration of the amounts and objects for which they propose to make expenditures, so that public attention and criticism might be directed to the same. Such a construction of the statute conduces to economy and honesty in public expenditures and has a wholesome and deterrent influence in preventing waste extravagance and dishonesty. A different construction invites and leads to an opposite result.

The objection that it is impossible to state in advance every detail of expenditure in every department of the city does not militate against a construction of the statute which requires in most cases. if not in all, a statement more detailed and specific than the naming of a lump sum. It is true the statute must be reasonably construed, but the fact that it is unreasonable to demand that every item of expense shall be enumerated in advance does not make unreasonable a demand that at least there shall be a classification of the expenditures in each department."

I also hold in that case that these statutes should be liberally construed in the interest of the public.

Since this case was submitted my attention has been directed to the very recent decision of the Supreme Court in the case of City of Lancaster v. Miller, 40 W. L. B. page 113, in which the court had occasion to construe certain sections of the statute imposing restrictions upon municipal corporations in making contracts, one of the sections being section 1693 to which I have previously referred, and which contains the declaration that "Every ordinance appropriating money shall contain an explicit statement of the uses and purposes for which the appropriation is made."

It is true that this particular provision of section 1693 was not under examination in that case, but the declaration of the court as to the purpose intended to be accomplished by the statute is quite as applicable to this provision as any other, and therefore equally so to the same provision when found in other sections of the statute. The court said:

"The evils against which these restrictive statutes are directed are municipal extravagance, and the negligence and indifference of municipal officers. They were designed for the protection of municipal taxpayers generally, as well as to guard against excessive special assessments against property to pay for local improvements. The mischief arising from municipal prodigality and the growth of municipal debts that attended thereon, called loudly for an effic-

ient remedy. These restrictive statutes are the answer to that call. They embody that principle of sound public policy which seeks to enforce economy in the administration of public affairs. The judicial tribunals of the state should administer these laws so as to advance the purpose thus sought to be accomplished. Contracts made in violation of these statutes should be held to impose no corporate liability. Persons who deal with municipal bodies for their own profit should be required at their peril to take notice of the limitations upon the powers of those bodies which these statutes impose.''

Having determined that the provision requiring the appropriation to be detailed and specific is mandatory, the next inquiry is—Is an appropriation for $10,000.00 which merely states that it is ''For extra expenses to be incurred during the Grand Army of the Republic Encampment in Cincinnati'' sufficiently detailed and specific to meet the requirements of the statute.

The appropriation in this case is from that part of the general fund to be expend· ed by the Board of Administration and the other expenses to be paid from that fund by that board are classified in both the semi-annual ordinances as salaries, office incidentals, city's portion of treets, city's portion of sidewalks, condemnation account, removal of garbage, construction and repair of steps, care of Tyler-Davidson Fountain, maintenance town halls, plumbing inspection and rental lower river road extension. In the last semi-annual ordinance in addition to these items of expense is added the item complained of in this case.

It is true there are many legitimate municipal expenses which readily occur to the mind as probably increasing with the presence of a large number of strangers in a large city such as Cincinnati, as for instance additional expenses for police, light, street cleaning, street repairing and sanitary purposes; but the semi-annual appropriations for these purposes are all made under other funds than that of the general fund to be expended by the board of administration. While I cannot say as a matter of law that there may not be increased expenses upon the occasion of the Grand Army Encampment which would require an additional expenditure of $10,000 by the Board of Administration, I certainly cannot say with certainty what these expenses are. They do not occur to the mind with such certainty and positiveness as to dispense with an enumeration of them; and since nearly all if not every legitimate expense which occurs to the mind as naturally increasing would be drawn from other funds than that part of the general fund to be expended by the Board of Administration, a strong presumption arises that this appropriation, if not in whole, certainly in part is for some purpose not within the scope of the power of a municipal corporation. The requirement therefore for a detailed statement becomes imperative, and

a lump appropriation in the manner made is not a compliance with the statute.

The third objection to the validity of the appropriation is that there is not sufficient money in the fund from which it is attempted to make the appropriation to pay the same.

The appropriations from the general fund for both semi annual ordinances are classified as follows, with the exception that in the second semi-annual ordinance, as previously explained, the item complained of is added under the head of Board of Administration department: ''For salaries, incidentals, city's portion streets, city's portion sidewalks, condemnation account, removal of garbage, construction and repair of steps, care Tyler-Davidson Fountain, maintenance town halls, plumbing inspection, rental lower river road extension.''

It is conceded by counsel for the defendants that the estimate for the Board of Administration department would not be sufficient to pay the $10,000.00 appropriation from the money estimated for that department, and it is not suggested that there will be any surplus in other funds which will be available for payment of the entire $10,000.00. This fact of itself would seem to make valid the objection of planitiff to the appropriation. But it is urged that by reason of a curtailing of expenses by the present Board of City Affairs in the purchasing agent's department, the electrican's department and the engineer's department, the amounts estimated for those departments will not be needed—the saving amounting to about $3500.00—and that this $3500.00, may be used to partly pay the appropriation of $10,000.00 and to that extent at least the objection of plaintiff is not tenable.

This argument raises the question to what extent, if any, balances when left over from one fund may be transferred for the purpose of increasing expenditures in another fund.

The contention that there exists a right to transfer from one fund to another, by which transfer one fund is increased beyond the estimate for the same, encounters two fatal objections. The first objection is that the appropriation cannot exceed the estimate, and that by such a transfer this inhibition would be avoided; and the second objection is found in the express declaration of sec. 2698 that ''The money belonging to one fund shall not be transferred to another, nor used for any purpose except that or which it was collected or received.''

It may be urged with force, however, that the transfer, such as it is suggested may be made in this case, is not a transfer from one fund to another fund, but a transfer from one department to another department of the same fund.

But if such is the nature of the transaction it is open to the objection that if such a transfer were permitted to be made it would enable the authorities to increase the appropriations for any one department

beyond the amounts allowed by the estimate for such department by merely transferring to it money which had been estimated and allowed for another department. In view of the fact that the estimates are to be made by every head of a department in an office, it would seem to be the intention of the law that the appropriations should be classified at least by departments; and to permit money estimated and appropriated for one department to be transferred to another and thus deflect it from the purpose for which it was estimated and appropriated for the purpose of increasing the appropriation of another department beyond the amount estimated and appropriated or it would seem to be contrary to the intention of the law. And this construction of the law would seem to find some confirmation in the provision of sec. 2690, which declares that "balances thereof (the appropriations) or credits remaining over at the end of the year shall then no longer be open for payment therefrom, and shall be re-credited to the funds from which they were taken." It is my opinion, therefore, that money saved by curtailing expenses in the purchasing agent's, electrician, and engineer's departments cannot be turned into the Board of Administration department for the purpose of enabling that department to expend a greater amount than has been estimated for it.

I have now reached the fourth and last objection to the appropriation complained of, viz: that the purpose of the expenditure is beyond the scope of the powers of a municipal corporation.

As the appropriation fails to state in express terms to what objects the expenditures from it are to be made, it cannot be said, looking at the language alone by which the appropriation is made, that it is for illegal purposes. But in the discussion of the objection that the appropriation was lacking in detailed and specific statement, I stated that from the fact that nearly if not every legitimate expenditure which would probably be increased had been provided for by an appropriation under its own head the presumption arose that these expenditures intended to be made under the $10,000.00 appropriation were illegal.

At that time I did not undertake to define what municipal expenditures incident to the visit of a large number of persons to a municipality would be legal and what expenditures would be illegal, reserving the consideration of that question to this time when the consideration of the fourth objection made by plaintiff to the appropriation complained of would arise.

In Ohio all legislative power rests in the state, and municipal corporations which are solely the creations of the statute have only such powers as are expressly granted to them, or which are necessarily implied from such express grants.

The powers of municipal corporations are enumerated in sec. 1692, to sec. 1692f, (2) and embrace about fifty grants of power to municipal corporations. Under these grants will be found ample power to furnish police and fire protection to visitors, to keep the streets in repair and to provide sanitary arrangements for their health and comfort, to furnish an adequate supply of water and to make various other provisions for their health and comfort.

We look in vain, however, for any grant of power to municial corporations in Ohio "to appropriate public moneys raised by taxation to the payment of expenses for entertaining guests invited to and receiving their public hospitalities."

This question was before this court in General Term in 1873 on the occasion of the invitation of the city to General Grant and Horace Greely to be present at the Cincinnati Industrial Exposition which was held in that year.

Upon that occasion the city authorities having voted money to pay the expenses of entertaining these distinguished guests, upon application of the city solicitor the General Term decided that such expenditure could not be made and that an injunction would lie to restrain the same. The case is entitled Moore v. Hoffman, 2 Sup. Ct. Rep., 453, and the opinion which was by Yaple, J. concurred in by Tilden, J., and O'Conner, J., is a learned and exhaustive discussion of the subject, and the reasoning of the court confirmed by the authorities cited leaves no room for doubt as to the correctness of the conclusions there reached.

Twenty-five years have elapsed since that decision and the omission of the legislature to pass any law which would enable such expenditures to be paid on future occasions of a similar character is the very strongest evidence that this state does not intend that any such powers shall be exercised by the municipalities which it creates.

The following authorities will show that the principle upon which this state has acted in withholding from municipal corporations the power to pay the expenses of invited guests is in force not only in Ohio, but is recognized to be a sound principle of municipal government in every state where the question has been raised.

In Dillon on Municipal Corporations, sec. 149 it is declared that,

"Without express power a corporation cannot make a contract to provide for celebrating the Fourth of July or to provide an entertainment for its citizens or guests. Such contracts are void and although plaintiff complies therewith on his part, he cannot recover of the corporation."

In New York state in the case of Hodges v. the City of Buffalo, 2 Denio, 210, the question arose whether the city of Buffalo could pay the expenses of military guests who had been invited and publicly entertained by the municipality, and it was held that the city had no such power.

In Massachusetts in the cases of Tash v. Adams, 10 Cushing, 252, Hood v. Lynn, 1 Allen, 103 and Claflin v. Hopkinton, 4 Gray,

502, it was held that a city had no power to appropriate money to celebrate the anniversary of the surrender of Cornwallis, to celebrate the Fourth of July or to purchase uniforms for an artillery company.

It is urged by counsel for the defendants, however, that it will be most unfortunate for the interests of the city to hold the entire appropriation of $10,000.00 invalid, for the reason that such action will prevent the city authorities from meeting the expenses of a conceded legitimate character which necessarily must be incurred by reason of the Grand Army Encampment, and for which no estimate was made at the time the law requires the estimate to be made, for the reason that at such time it was not known that the encampment would be here, the decision to that effect having been reached not only after the estimate for the year 1898, but also after the appropriation for the first half of the fiscal year of 1898 had been made.

The result predicted does not necessarily follow from a decision holding the appropriation of $10,000 00 as made invalid. The law has carefully had provision for the happening of a contingency after the estimates are made, when such contingency could not reasonably have been forseen. To meet the expenses of such contingencies it has authorized the levy annually of a contingent fund of $50,000.00. The determination to hold the encampment here, if it increases the legitimate expenses of the municipality beyond the estimate for the year is clearly a contingency the expenses of which may come out of the contingent fund.

But the expenses to be paid out of the contingent fund must be legitimate municipal expenses. The contingent fund is a municipal fund whose revenue is raised by taxation and such revenue cannot be diverted from legitimate municipal purposes by placing it in a fund designated as a contingent fund.

In the consideration of the law governing this case and in reaching the conclusion in the same I have been urged to consider the patriotic purposes of the promoters of the movement to have the annual encampment of the Grand Army of the Republic in our city, to consider the spirit of hospitality and gratitude which prompts such promoters to entertain the members of an organization whose patriotic services have made us all debtors to them, and to remember also the benefits of a pecuniary character which will accrue to the city from the attendance of such a large number of visitors as will be attracted by such an occasion. I can only answer this appeal by saying that in the present state of the law these considerations cannot affect the action of a court, because it is not within the power of a court to make the law, and what the law forbids no court can grant. Its sole duty is to declare the law and to enforce it.

The order of the court will be that at

emporary restraining order will be granted as prayed for.

J. D. Brannan, Gustavus H. Wald, for Plaintiff.

Ellis G. Kinkead, Corporation Counsel, for Defendants.